IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-02201-LTB-KMT

MARVIN GREEN,

    Plaintiff,

v.

JOHN E. POTTER, Postmaster General, United States Postal Service,

    Defendant.

_____

ORDER
_____

    This matter is before me on Defendant John E. Potter, Postmaster General, United States Postal Service's ("The USPS") Motion to Dismiss **[Doc #8]**. Defendant's motion has three parts. First, Defendant argues that I lack subject matter jurisdiction over Plaintiff Marvin Green's four retaliation claims because they are untimely. Second, Defendant argues that Plaintiff's constructive discharge claim should be dismissed because Plaintiff fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Third, in the alternative, Defendant asks that Plaintiff be required to submit a more definite statement pursuant to Fed. R. Civ. P. 12(e). After consideration of the parties' arguments, and for the reasons stated below, I deny as moot Defendant's motion to dismiss Plaintiff's four retaliation claims as untimely; I deny Defendant's motion to dismiss Plaintiff's constructive discharge claim under Fed. R. Civ. P. 12(b)(6); and I grant Defendant's request for a more definite statement.

## I. Background

Plaintiff was employed by The USPS from August 4, 1973, until he retired on March 31, 2010, advancing during his career from letter carrier to postmaster. Plaintiff filed this lawsuit alleging four instances of retaliation and a constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Plaintiff alleges the following:

On August 14, 2008, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint alleging a denial of promotion based on race. From that point on, Plaintiff's manager, Greg Christ, started retaliating against Plaintiff by bullying and harassing him. On March 10, 2009, Plaintiff and Richard Sprague, the president of the National League of Postmaster's Colorado branch, met with Christ to protest the escalating and repeated bullying and harassment. After that meeting, Christ started harassing Plaintiff on a daily basis, often undermining Plaintiff by telling him one thing and Plaintiff's staff another. In March or April 2009, Plaintiff started receiving harassing emails and correspondence from Charmaine Ehrenshaft, manager of The USPS's labor relations for the Colorado/Wyoming district. On May 14, 2009, in response to Christ and Ehrenshaft's conduct, Plaintiff filed an informal EEO complaint alleging retaliation. On July 17, 2009, Plaintiff again contacted The USPS's EEO office and filed another informal EEO complaint alleging retaliation.

On August 12, 2009, The USPS's EEO office informed Plaintiff that it had concluded processing his May 14 informal complaint and informed him of his right to file a formal complaint within 15 days. Then, on or about November 10, 2009, the Equal Employment Opportunity Commission notified The USPS that the discovery process for Plaintiff's 2008 denial of promotion based on race complaint would begin and that a hearing would be set.

While Plaintiff was at home on leave for the Thanksgiving holiday on November 25, 2009, Ehrenshaft had a certified letter delivered to Plaintiff at his home stating that Plaintiff was "instructed to appear for an investigative interview regarding allegations of non-compliance in the grievance procedure" on December 2, 2009. The interview was rescheduled for December 11. Plaintiff asserts that sending this notice was retaliation for his protected Title VII activity. This notice is his first retaliation claim.

During Plaintiff's monthly meeting with his supervisor on December 9, 2009, Plaintiff asked his manager, Jarmin Smith, why he was being investigated. Smith said he did not know but that Ehrenshaft had contacted him asking for anything he had on Plaintiff. Smith told Ehrenshaft that he did not have any problems with Plaintiff, but Smith told her he would forward her a file that Christ kept on Plaintiff.

At the December 11, 2009, investigative interview Plaintiff was interrogated for, *inter alia*, intentionally delaying the mail. Plaintiff received no notice that this would be an interview topic. Ehrenshaft and her supervisor, David Knight, interrogated Plaintiff for approximately 2.5 hours. Plaintiff alleges this investigative interview was meritless, a sham, and was retaliation for protected Title VII activity. The interview is Plaintiff's second retaliation claim.

When Ehrenshaft and Knight concluded their interview, Plaintiff got up to leave, but two officers from the Office of Inspector General ("OIG") appeared and told him that they had been ordered to interrogate him for criminal and felonious conduct. After the OIG interrogation, the officers informed Plaintiff that the intentionally delaying the mail issue would be referred to the U.S. Attorney's Office for consideration of whether to file criminal charges. Plaintiff asserts that the OIG threat of criminal prosecution was groundless and retaliatory in violation of Title VII.

The OIG threat is Plaintiff's third retaliation claim.

After the OIG interrogation, Ehrenshaft and Knight reappeared and, without discussion or explanation, ordered Plaintiff to sign an Emergency Placement memorandum (the "Memo") and to immediately surrender his agency identification and cell phone. The Memo informed Plaintiff that he was being placed in "off-duty status" for the "disruption of day-to-day postal operations." The Memo stated that Plaintiff would be "returned to duty status when the cause for nonpay status ceases." Plaintiff alleges that Defendant placing him on emergency leave in a non-pay status was retaliatory in violation of Title VII. It is Plaintiff's fourth retaliation claim.

On or about December 15, 2009, Plaintiff received a settlement document from The USPS (the "Settlement"). It required Plaintiff to take a downgrade to an EAS-13 postmaster position in order to be paid while on the emergency leave–he was an EAS-22. Downgrading to an EAS-13 required Plaintiff to take a roughly $38,784.00 pay decrease. The Settlement also mandated that by March 31, 2010, Plaintiff must either retire or transfer to a position 400 miles away in Wyoming. It also required Plaintiff to use his annual and sick leave in order to receive his next paycheck and all subsequent paychecks between December 18 and March 31. The Settlement allowed Plaintiff's annual and sick leave to be paid at his current EAS-22 salary. Plaintiff's representative, Robert Podio, told him that this was the "best deal he could get" and that "it could take up to a year before [Plaintiff] received a paycheck or got a hearing on the Emergency Leave/nonpay status issue." Plaintiff signed the Settlement on December 16, 2009.

On February 9, 2010, Plaintiff signed his retirement papers, effective March 31 of that year. Plaintiff then filed a formal EEO complaint on April 26, 2010, alleging that he was constructively discharged based on retaliation. Constructive discharge is Plaintiff's fifth claim.

## II. Defendant's Motion to Dismiss Plaintiff's First Four Claims as Untimely

Defendant's motion to dismiss asserts that Plaintiff's four retaliation claims fell outside the 45-day window prescribed by 29 C.F.R. § 1614.105(d). This would make them untimely, which means that I would lack subject matter jurisdiction over them. Plaintiff's response explicated further facts demonstrating that all of the claims were timely. Defendant withdrew its timeliness argument in its reply. Accordingly, I deny as moot Defendant's motion to dismiss Plaintiff's first four claims as untimely.

## III. Defendant's Motion to Dismiss Plaintiff's Fifth Claim Pursuant to Rule 12(b)(6)

### A. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly,* 550 at 556). When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Legal conclusions, however, do not receive this treatment. *Iqbal*, 129 S.Ct. at 1950.

### B. Analysis

A constructive discharge in a Title VII context occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the

employee's position would feel compelled to resign. Essentially, a plaintiff must show that he had *no other choice* but to quit." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998) (internal citations and quotations omitted)). This standard is objective: "the employer's subjective intent and the employee's subjective views on the situation are irrelevant." *Strickland v. United Parcel Serv., Inc.,* 555 F.3d 1224, 1228 (10th Cir. 2009).

Additionally, the finding of a constructive discharge must be justified by the existence of certain "aggravating factors" that make staying on the job intolerable. *Cockerell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir. 1986); *James v. Sears, Roebuck and Co., Inc.*, 21 F.3d 989, 992 (10th Cir. 1994); *see EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007). A plaintiff's burden in establishing constructive discharge is thus substantial. *Fischer v. Forestwood Co., Inc.,* 525 F.3d 972, 980 (10th Cir. 2008). The question in constructive discharge cases is whether the employee had any other reasonable choice but to resign in light of the employer's actions. *Tran v. Trustees of State Colleges of Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004). Courts evaluate the voluntariness of an employee's resignation using "an objective, totality of the circumstances standard." *Fischer,* 525 F.3d at 980.

Defendant's motion to dismiss Plaintiff's constructive discharge claim pursuant to Rule 12(b)(6) has two arguments. First, under the totality of the circumstances, Plaintiff has not alleged facts that plausibly give rise to a finding that his retirement was involuntary. Drawing on four considerations of the "totality of the circumstances" discussed in *Lighton v. University of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000), Defendant argues that Plaintiff's resignation was voluntary because he could have transferred to Wyoming and accepted the demotion; he had a

reasonable time to make his decision; he understood the nature of his choice; and he selected his retirement date. Second, Defendant argues that Plaintiff has not alleged facts that plausibly give rise to a finding that his working conditions were so intolerable that a reasonable person in his position would have felt forced to resign. Defendant states that "Plaintiff's allegations are legal conclusions, bare assertions, or conclusory statements" and are simply a "formulaic recitation of the elements" of constructive discharge rather than well-pleaded facts.

*Twombley*'s plausibility requirement is not a probability requirement; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the alleged conduct. *Twombley*, U.S. at 556. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* at 557.

Plaintiff's complaint presents enough factual allegations to reasonably infer that Defendant constructively discharged Plaintiff. It does not merely state that he was constructively discharged and recite the definition thereof. The complaint provides dates and descriptions of Plaintiff's Title VII protected conduct. The complaint also gives specific factual accounts–dates, places, and actors–of Defendant's conduct that, if proven as retaliations for Plaintiff's protected conduct, would violate his Title VII protections and would satisfy the illegality element of constructive discharge. Moreover, the complaint gives sufficient details of the circumstances surrounding and leading up to Plaintiff's resignation that plausibly show his resignation was objectively involuntary–such as the fact that an employee with 27 years of unblemished service was given the option to transfer 400 miles and take a significant diminution in pay and status or retire. It also presents specific factual descriptions of plausible aggravating circumstances that could make staying on the job intolerable to a reasonable person, including the December 11

investigatory interrogation by Ehrenshaft, Knight, and OGI, the November 25 notice, the forced Emergency Leave with non-pay status, and the threat of baseless criminal prosecution. These are allegations of fact, not bare legal conclusions, and as such, they must be viewed in a light most favorable to Plaintiff. *Teigen*, F.3d at 1078.

In sum, the facts alleged in the complaint provide the "further factual enhancement" sufficient to elevate it above an inadequate "naked assertion" of constructive discharge. *See Twombley*, U.S. at 557. Accordingly, I deny Defendant's motion to dismiss Plaintiff's constructive discharge claim.

**IV. Defendant's Request for a More Definite Statement Pursuant to Rule 12(e)**

Federal Rule of Civil Procedure 12(e) allows a party to move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. Fed. R. Civ. P 12(e).

Plaintiff's complaint has just one "Claims for Relief" section. Plaintiff appears to assert the five "separate actionable claim[s]" noted in Part I *supra* in that single section. The first four appear to be the retaliation claims, and the fifth is the constructive discharge claim. Each of the paragraphs asserting these five claims states that "this is a separate actionable claim." Other paragraphs in the "Claims for Relief" section, however, do not state whether Plaintiff intends them to be "separate actionable claims." For example, the "Claims for Relief" section also contains allegations that Plaintiff "suffered continuous retaliatory conduct," that "the agency's retaliatory acts included, but were not limited to, a calculated pattern of harassment, bullying,

insults, humiliation, and unjustified disciplinary actions," and that "[t]he agency sought to and did intentionally inflict severe emotional distress upon [Plaintiff]," but these allegations are not accompanied by a statement identifying them as "separate actionable claim[s]."

The thrust of Defendant's request for a more definite statement is two-fold. Defendant is unclear whether Plaintiff's claims are limited to those five that specifically state that they are "a separate actionable claim" or whether Plaintiff is asserting additional claims–for example, the intentional infliction of severe emotional distress. Additionally, Defendant requests a more definite statement with respect to each claim that Plaintiff is asserting in order to clarify the nature and scope of those claims.

I note at the outset that the my ruling on this issue is not necessarily indicative of a lack of supporting facts or detail by Plaintiff. *See* Part III.B *supra*. Rather, it relates to the complaint's structure and form, which leads to Defendant's inability to ascertain the exact claims pleaded and their nature and scope. Defendant met its burden under Rule 12(e). It requested the statement before filing a responsive pleading. *Cooper v. Shumway*, 780 F.2d 27, 29 (10th Cir. 1985) ("[o]rdinarily, a motion to dismiss is not deemed a responsive pleading") (citing *Educ. Servs., Inc. v. Maryland State Bd. for Higher Educ.,* 710 F.2d 170, 176 (4th Cir.1983)). It also identified the complaint's defects and proposed details desired. The focus therefore turns to the complaint.

In its current form and structure, Plaintiff's complaint makes its claims and their appertaining facts indiscernible. In the single "Claims for Relief" section, there are no headings clearly describing and identifying discrete claims. Instead, the claims are buried within 16 paragraphs. The complaint also uses verbiage suggesting additional claims–"harassment," "bullying," "intentionally inflict[ing] severe emotional distress," among others–yet does not

identify these in the same way it identifies the five claims enumerated above. It also generally references Title VII at the beginning of the "Claims for Relief" section, but where it appears Plaintiff is stating his actual claims, the complaint references no legal theory. One thus cannot tell the precise legal theory upon which each claim is based, even if the claim is ascertainable.

For the foregoing reasons, I grant Defendant's request for a more definite statement. Pursuant to this order, Plaintiff should amend his complaint so that his claims for relief are unambiguous and conspicuous and any verbiage suggesting additional claims is either removed or denoted and supported as a distinct claim. This is traditionally accomplished by having each claim as a heading itself and having the appertaining facts thereunder. Each claim should also reference the legal theory upon which the claim is based.

For the reasons set forth above, IT IS ORDERED that:

1) Defendant's Motion to Dismiss Plaintiff's four retaliation claims **[Doc #8]** is DENIED AS MOOT;

2) Defendant's Motion to Dismiss Plaintiff's constructive discharge claim is DENIED;

3) Defendant's request for a more definite statement is GRANTED; and

4) Plaintiff shall file an amended complaint within 14 days that substantially conforms to the guidelines described above .

Date: July   12  , 2011 in Denver, Colorado.

                            BY THE COURT:

                              s/Lewis T. Babcock
                            LEWIS T. BABCOCK, JUDGE