IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-02201-LTB-KMT

MARVIN GREEN,

    Plaintiff,

v.

PATRICK R. DONAHOE, Postmaster General, United States Postal Service,

    Defendant.

_____

ORDER
_____

This matter is before me on the Motion for Summary Judgment **[Doc #90]**, filed by Defendant Patrick R. Donahoe, Postmaster General, United States Postal Service (the "Postal Service"). For the reasons stated below, I GRANT Defendant's motion.

**I. Background**

This case involves Plaintiff Marvin Green's retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The full background runs deep and wide, but only a brief recitation of the facts is necessary to resolve the instant motion. What follows is not subject to genuine dispute unless otherwise noted.

**A**

Plaintiff is an African-American man who began working for the Postal Service in 1973. He advanced and obtained his first supervisory role in 1985. In 2002 Plaintiff was promoted to an EAS-22 level Postmaster at the Englewood, Colorado post office, which was in the Postal Service's Colorado/Wyoming district. He held this position until retiring on March 31, 2010.

In early 2008, Plaintiff applied for an EAS-24 Postmaster position in Boulder, Colorado. He was not hired. Upset, on July 11, 2008, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor, and on August 14, 2008, he filed a formal EEO complaint alleging that he had been discriminated against because of his race. He specifically alleged that Gregory Christ, who was Plaintiff's immediate supervisor from 2008 through July 2009 and who was responsible for selecting the Boulder Postmaster, had not hired Plaintiff because of his race. On November 7, 2008, Plaintiff requested a hearing before the Equal Employment Opportunity Commission. This complaint was ultimately resolved through a settlement.

On May 14, 2009, Plaintiff filed an informal EEO complaint alleging that Christ had again discriminated against him because of his race and that Christ had retaliated against him because of his prior EEO activity. Plaintiff alleged that Christ threatened, demeaned, and harassed him.

Plaintiff filed another informal EEO complaint on July 17, 2009. In it he alleged that Christ and Jarmin Smith, who replaced Christ as Plaintiff's immediate supervisor in July 2009, had discriminated against him because of his race and had retaliated against him because of his EEO activity related to the Boulder Postmaster position. Plaintiff alleged that Christ and Smith threatened, demeaned, and harassed him.

By letter dated August 12, 2009, the Postal Service's EEO office informed Plaintiff that it had concluded processing his two informal complaints and that he could file a formal complaint.

**B**

In late November 2009, while at home, Plaintiff received a letter dated November 25, 2009, from Charmaine Ehrenshaft. Ehrenshaft has been the Postal Service's manager of labor relations for its Colorado/Wyoming district since August 2008. The letter instructed Plaintiff to appear for an

2

investigative interview regarding allegations of non-compliance with the Postal Service's grievance procedures. As a Postmaster, Plaintiff had certain responsibilities with respect to handling employee grievances. Defendant alleges that Plaintiff was derelict in those duties. Specifically, from April 2009 through December 2009, Plaintiff and his post office chronically failed to comply with grievance procedures, which led to multiple adverse decisions against Postal Service management and to the Postal Service paying penalties and payouts to grievants. Ehrenshaft and David Knight, the manager of human resources for the Postal Service's Colorado/Wyoming district since June 2008, were also concerned that Plaintiff had intentionally delayed signing return receipts for grievances sent to him by the National Letter Carrier's Union ("NCLU"). On October 15, 2009, Knight was forwarded a congressional inquiry by Senator Mark Udall dated September 28, 2009, related to complaints by the NCLU about Plaintiff to that effect. Defendant alleges that the purpose of the investigation and interview was to discuss these concerns.

On December 11, 2009, Ehrenshaft and Knight conducted the investigative interview. Plaintiff was represented at the interview by Robert Podio, a representative from the National Association of Postmasters. Knight asked Plaintiff about the grievance issues and intentionally delaying signing return receipts for grievances. He also asked Plaintiff about certain allegations that another Postal Service employee had levied against Plaintiff.

As Plaintiff's meeting with Knight and Ehrenshaft concluded, two agents from the Postal Service's Office of Inspector General ("OIG") entered the room. OIG is an independent branch of the Postal Service. OIG had initiated its own investigation into whether Plaintiff had intentionally delayed the mail. Knight had previously told an OIG agent that Knight would be interviewing Plaintiff on December 11, 2009, and that the agent could interview Plaintiff afterwards. Plaintiff's

current attorney joined him for the OIG interview.

After the OIG interview, Knight and Ehrenshaft appeared. They gave Plaintiff an emergency placement letter to sign, which he did, thereby putting him on emergency placement effective immediately. The letter stated that Plaintiff was being placed in "off-duty status immediately" for the disruption of day-to-day postal operations. Knight ordered Plaintiff to surrender his Postal Service identification and cell phone and not to return to the Englewood post office.

Following the investigative interview and emergency placement, on December 12, 2009, Podio initiated negotiations with Knight to resolve the issues raised during the investigative interview. Through emails and phone calls, Podio, on Plaintiff's behalf, and Knight negotiated and reached a settlement agreement in which the Postal Service agreed not to pursue any of the issues discussed at the investigative interview if Plaintiff agreed to retire. On December 15, 2009, Knight sent Podio a draft settlement agreement, and Podio requested that certain changes be made. Ehrenshaft sent Podio a revised draft that same day.

On December 16, 2009, Plaintiff, Podio, and Knight signed a settlement agreement. By signing it, Plaintiff agreed to retire from the Postal service by March 31, 2010. Plaintiff submitted his retirement papers on February 9, 2010, and his retirement was effective March 31, 2010.

On February 17, 2010, Plaintiff filed a formal EEO complaint alleging that by putting him on emergency placement on December 11, 2009, Knight, Ehrenshaft, and Smith had retaliated against him for his prior EEO activity. On March 22, 2010, Plaintiff filed an informal EEO complaint in which he alleged that he had been constructively discharged by being forced to retire in retaliation for prior EEO activity. Plaintiff followed-up this informal complaint with a formal complaint on April 26, 2010, which made the same allegations.

**C**

Plaintiff then brought his dispute to this Court by filing suit on September 8, 2010. He asserted five claims of retaliation under Title VII based on these five acts, respectively: (1) the investigative interview letter delivered to his home; (2) the investigative interview; (3) the threat of criminal prosecution for intentionally delaying the mail; (4) putting him on emergency placement; and (5) his constructive discharge by forced retirement.

On October 28, 2011, I dismissed Plaintiff's first three claims on the ground that Plaintiff had not exhausted his administrative remedies. *See* Doc #26. This left Plaintiff with his constructive discharge claim and his emergency placement claim, which were not at issue in that order. Defendant now moves for summary judgment as to those claims under Rule 56 of the Fed. R. Civ. P.

**II. Standard of Review**

Rule 56 provides that summary judgment "is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Concrete Works of Colo., Inc. v. City & Cnty of Denver*, 36 F.3d 1513, 1516 (10th Cir. 1994) (quoting Fed. R. Civ. P. 56(c)); *see also Klen v. City of Loveland, Co.*, 661 F.3d 498, 508 (10th Cir. 2011)). A fact is material if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is genuine if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248). When applying this standard, I must view

the evidence and draw all reasonable inferences therefrom in the light most favorable to Plaintiff as the nonmoving party. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).

As the moving party, Defendant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler*, 144 F.3d at 670-71. To meet this burden, he need not disprove Plaintiff's claims; rather, he must "simply point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* If he meets this initial burden, the burden shifts to the nonmoving party, Plaintiff, to "set forth specific facts showing that there is an genuine issue for trial." *Anderson*, 477 U.S. at 256. Plaintiff may not rest upon his pleadings to do so. *Id.* He must instead "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotations omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III. Discussion

Title VII proscribes retaliating against an employee because he "opposed" any practice made unlawful by Title VII, or because he "participated . . . in an investigation, proceeding, or hearing under this subchapter." *See* 42 U.S.C. § 2000e-3(a); *see also Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

### A

Defendant argues that for a host of independent reasons, Plaintiff's constructive discharge claim cannot withstand summary. The first is that Plaintiff did not properly exhaust it. I agree.

**1**

A plaintiff must properly exhaust his administrative remedies before bringing suit under Title VII. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997); *Khader v. Apsin*, 1 F.3d 968, 971 (10th Cir. 1993). This rule applies to " 'each discrete incident' of alleged discrimination or retaliation" because each incident "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.")). The requirement "serves to put an employer on notice of a violation prior to the commencement of judicial proceedings. This in turn serves to facilitate internal resolution of the issue rather than promoting costly and time-consuming litigation." *Id.* at 1211.

One component of properly exhausting a Title VII claim is that the plaintiff must have first consulted with an EEO counselor "prior to timely filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a)(1). Contact must have been initiated with the EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." *Id.* "This and other deadlines have been construed as a statute of limitations and are thus[] subject to waiver, estoppel, and equitable tolling." *Baltazar v. Shineski*, 2011 WL 2607154, *4 (D. Colo. July 1, 2011) (citing *Beene v. Delaney*, 70 Fed. App'x 486, 490-91 (10th Cir. June 27, 2003); *Hanlen v. Henderson*, 215 F.3d 1336, 2000 WL 628205, *3 (10th Cir. May 16, 2000) (addressing the 45-day deadline)). Under *Martinez* and *Morgan*, then, "contact with an EEO counselor is required within 45 days of each discrete discriminatory action" because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id.*

(quoting *Martinez*, 347 F.3d at 1210 (citing *Morgan*, 536 U.S. at 114)).

Determining when the 45-day period began means marking the date the claim accrued. In employment discrimination cases, "a claim accrues when the disputed employment practice-the demotion, transfer, firing, refusal to hire, or the like-is first announced to the plaintiff." *Almond v. Unified School Dist.*, 665 F.3d 1174, 1176 (10th Cir. 2011) (citing *Del. State. Coll. v. Ricks*, 449 U.S. 250 (1980)). The Tenth Circuit has explained that this is so even when the consequences of an alleged discriminatory action are felt by the employee at a later date: "[W]hether the adverse consequences flowing from the challenged employment action hit the employee straight away or only much later, the 'limitations period [ ] normally commence[s] when the employer's decision is made' and 'communicated' to the employee." *Id.* (quoting *Ricks*, 449 U.S. at 258).  Or, "[p]ut differently, the 'proper focus' is on the time that the employee ha[d] notice of 'the discriminatory acts,' not 'the time at which the consequences of the acts became most painful.' " *Id.*  And although the Tenth Circuit has not addressed the specific issue of when a constructive discharge claim accrues, it has held that constructive discharge claims "should not be treated differently from any other adverse employment decision." *Hulsey v. Kmart Inc.*, 43 F.3d 555, 558 (10th Cir. 1994).

## 2

The inquiry thus turns to determining when Defendant's allegedly retaliatory actions that form the basis of this claim were communicated to Plaintiff or when he had notice of them. There is no dispute that all of the acts occurred on or before December 16, 2009. *See* Pl.'s Am. Compl. Doc #20 at 107-20; *see also* Def.'s Mot. Ex. F at 5-7 (Plaintiff's response to interrogatory asking him to list the "Specific Acts of Retaliation alleged in the action;" all actions occurred before December 16, 2009). There also does not appear to be a dispute that the acts were announced to,

communicated to, or otherwise known by Plaintiff on the day they occurred or, at the latest, by December 16, 2009. *See* Pl.'s Am. Compl. Doc #20 at ¶¶ 107-20; Def.'s Mot. Ex. 34 at 5-7. The allegedly retaliatory acts that Plaintiff claims forced him to retire culminated with the settlement agreement, specifically the terms therein, to which Plaintiff agreed by signing on December 16, 2009. Under *Ricks* and *Almond*, then, this claim accrued, at the latest, on December 16, 2009. *See Almond*, 665 F.3d at 1176; *Ricks*, 449 U.S. at 259 (limitations period began running when employee was informed of the denial of tenure, not from the date last employed). It is further undisputed that Plaintiff first made contact with the EEO regarding this claim on March 22, 2010. This was well over 45 days later. Plaintiff therefore failed to meet the timely contact requirement.

In opposition, Plaintiff does not argue waiver, estoppel, or equitable tolling of the 45-day clock. Nor does he contend that he in fact did not have notice of the acts underlying this claim until sometime within the 45 days before his March 22, 2010, contact. Plaintiff instead asks me to hold that for the purposes of exhaustion, the accrual date for a constructive discharge claim is the date an employee resigned. He submits that under that rule, here, the accrual date would be February 9, 2010 (when Plaintiff identified and informed Defendant of his retirement date), or March 31, 2010 (his retirement date). In support, he cites three cases and appears to assert that in constructive discharge cases the Tenth Circuit uses the date of an employee's resignation as the accrual date. Plaintiff's reliance on the cases is misplaced.

He first cites *Sioux v. Target Corporation*, 2010 WL 2927373, *3-4 (W.D.Okla. July 22, 2010) (unpublished). The court there indeed held that an employee's constructive discharge claim accrued when she gave her employer definitive notice of her intent to retire. *Sioux*, however, does not compel the conclusion that Plaintiff here timely contacted the EEO. The case is not binding. It

9

is also is distinguishable. There the plaintiff submitted a form on December 11, 2003, notifying the defendant that she was resigning and that her last day would be December 19, 2003. *Id.* at *1. Here Plaintiff signed an agreement to retire by a certain date, the terms of which Plaintiff claims forced him to retire-that is, constructively discharged him. He knew of these terms (and agreed to them) on December 16, 2009. Nevertheless, were I to apply *Sioux*'s reasoning, I would still conclude that Plaintiff's constructive discharge claim accrued on December 16, 2010. This is because in *Sioux* the court concluded that the employee's constructive discharge claim accrued on the date she notified her employer of her resignation and not on her last day of work. *Id.* at *3-4. Plaintiff notified the Postal Service on December 16, 2009, that he was retiring by signing the settlement agreement that day. Moreover, *Sioux* predates and appears contrary to *Almond*. *See* 665 F.3d at 1176.

Plaintiff also cites *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972 (10th Cir. 2008), and *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998). *Fischer* did not address the accrual date of a constructive discharge claim. *See* 525 F.2d 972. *Draper* is not only non-binding, it appears contrary to *Almond*. Plaintiff offers nothing more than these three cases. He also addresses neither *Almond* nor *Ricks* despite the fact he asks me to repudiate them. I decline to do so.

Accordingly, I conclude that Plaintiff did not timely contact an EEO counselor regarding this claim; he therefore failed to properly exhaust it. Consequently, the claim cannot withstand summary judgment. *See Baltazar*, 2011 WL 2607154, at *4; *DeWalt v. Meredith Corp.*, 288 Fed. App'x 484 (10th Cir. July 31, 2008) (unpublished); *see Montes v. Vail Clinic, Inc.*, 497 F.3d 1160 (10th Cir. 2007). As a result, I need not reach Defendant's remaining arguments for summary judgment of this claim. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

**B**

Defendant similarly argues that for multiple reasons he is entitled to summary judgment as to Plaintiff's emergency placement claim, the first being that Plaintiff cannot establish the second element of a prima facie case of retaliation. Again I agree.

**1**

The *McDonnell Douglas* burden-shifting analysis applies to Plaintiff's claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Stover*, 382 F.3d at 1070. Under this scheme, Plaintiff has the initial burden of establishing a prima facie case of retaliation. *Stover*, 382 F.3d at 1070. Doing so shifts the burden to Defendant to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. *Id.* at 1071. If Defendant so provides the burden oscillates back to Plaintiff to show that the proffered reason is a pretext for unlawful discrimination. *Id.* He may demonstrate pretext "by showing the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Id.*

To establish a prima facie claim of retaliation, Plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008). The second element requires Plaintiff to establish "that a reasonable employee would have found the challenged action materially adverse-that is, that the action might 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination. . . .' " *Id.* at 1213 (quoting *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007) (quoting *Burlington Northern and Sante Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006))). Requiring the action to be materially adverse

is designed "to separate trivial harms from actionable injuries because Title VII does not establish 'a general civility code for the American workplace.' " *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). The term does not include "a 'mere inconvenience or an alteration of job responsibilities.' " *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005) (quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000)). The allegedly retaliatory conduct "must produce an injury or harm." *Somoza*, 513 F.3d at 1212 (citing *Burlington Northern*, 548 U.S. at 67).

It is important to underscore that the "test for determining whether an action would have been considered material by an employee is an objective test, asking how a reasonable employee would have interpreted or responded to the action." *Id.* at 1213. The Supreme Court adopted a reasonable employee standard "because '[a]n objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.' " *Id.* (quoting *Burlington Northern*, 548 U.S. at 68-69).

**2**

I now apply these principles to the emergency placement. It is worth stating at the outset that this claim is based upon only the emergency placement, not any other allegedly retaliatory act. As a corollary, while mindful of the context in which it occurred, see *Somoza*, 513 F.3d at 1213, I hone my inquiry to whether the emergency placement might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Firstly, Plaintiff fails to sufficiently identify, much less establish, how the emergency placement harmed or injured him. Beginning with economic harm, Defendant submits evidence demonstrating that Plaintiff received his regular pay without interruption from the date of his

emergency placement through his retirement on March 31, 2010. *See* Def.'s Mot. Ex. A (Ehrenhshaft Affidavit) 45, 46 (first paragraph numbered 46), and Attach. 17 (Plaintiff's pay records). Plaintiff does not argue otherwise; nor does he offer any evidence to that effect. *See Kirch v. Embarq Mgmt. Co.*, - - - - F.3d - - -, 2012 WL 6720670, *5 (10th Cir. 2012) ("In a summary judgment proceeding a party's assertion of undisputed facts is ordinarily credited by the court unless properly disputed by the opposing party.") (emphasis added); *see* Fed. R. Civ. P. 56(e) ("If a party ... fails to properly address another party's assertion of fact ..., the court may ... (2) consider the fact undisputed for purposes of the motion...."). The placement letter also states that Plaintiff would "remain on the rolls." Def.'s Mot. Ex. C Attach. 14.

To be sure, Plaintiff argues that he was nominally placed in off-duty status without pay and asserts that this "affects" an employee's employment status. This is unavailing. It does not raise a genuine issue of material fact as to whether he was actually paid. Defendant explains that while non-pay status is the default status for emergency placement the Postal Service may still decide to keep paying the employee, and it presents undisputed evidence that occurred here. *See id.* In fact, the emergency placement letter does not state that Plaintiff was placed in "non-pay status;" it states that Plaintiff was placed in "off-duty status" and that "the employee is returned to duty status when the cause for nonpay status ceases." Def.'s Mot. Ex. C Attach. 14 (emphasis added). Furthermore, the assertion that emergency placement in off-duty status without pay affects an employee's employment status is unsupported and conclusory. It is also insufficient to show a materially adverse action: to be materially adverse, an action must do more than just "affect" an employee.

I note that because Plaintiff remained employed while on emergency placement and continued receiving pay at his current salary until his retirement, his emergency placement was more

akin to administrative leave with pay. Being placed on administrative leave with pay, even to be investigated, does not constitute an adverse employment action. *See Joseph v. Leavitt*, 465 F.3d 87, 90 (2nd Cir. 2006); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 889, 892 (8th Cir. 2005); *Peltier v. United States*, 388 F.3d 984, 986, 988 (6th Cir. 2004); *Breaux v. City of Garland*, 205 F.3d 150, 154-55, 158 (5th Cir. 2000). Plaintiff does not argue with this analogy or rule.

Plaintiff also does not argue or establish that the emergency placement resulted in some other economic harm or injury, such as a loss of benefits. He likewise fails to argue or show that the placement wrought any non-economic harm. He thus fails to establish that the placement caused any injury or loss. *See Somoza*, 513 F.3d at 1212 (the allegedly retaliatory conduct "must produce an injury or harm"); *see also Morrison v. Carpenter Tech. Corp.*, 193 Fed App'x 148, 154 (10th Cir. Aug. 22, 2006) (concluding that the plaintiff had failed to establish second prong of his retaliation claim in part because the action did not result in any economic harm to the plaintiff).

Secondly, there is no evidence that the emergency placement rose to the level of discipline necessary to be materially adverse. "Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action." *Medina*, 413 F.3d at 1137. "A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment-for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Id.* Plaintiff does not establish that any of these occurred as a result of the emergency placement; nor does he submit evidence to that effect.

Defendant also submits evidence that emergency placement in off-duty status is not even considered a disciplinary action, that it does not affect the employee's employment status, and that

Plaintiff's emergency placement letter was never placed in Plaintiff's personnel file. *See id.* (concluding that an employer's warning letter to an employee fell short of materially adverse in part because the letter was not placed in the employee's personnel file and because the plaintiff did not demonstrate that her subsequent employer-or any subsequent employer-had discovered or could discover the letter in the future). The emergency placement letter itself suggests that the placement was not discipline. It states that Plaintiff would "remain on the rolls" and that "[u]se of these emergency procedures *does not preclude disciplinary actions* based upon the same conduct." Def.'s Mot. Ex. C Attach. 14 (emphasis added). Plaintiff responds to this only by denying these facts and asserting that emergency placement in an off-duty status without pay "affects" the employees status, and he does not provide contrary evidence. *See* Pl.'s Resp. at 15  86. This is not enough. *See Elephant Butte Irr. Dist. ov New Mexico v. U.S. Dep't of Interior*, 538 F.3d 1299, 1305 (10th Cir. 2008) ("Under Fed. R. Civ. P. 56, a party opposing a motion for summary judgment 'may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.' ") (quoting Fed. R. Civ. P. 56(e)(2)). He also ignores that the evidence establishes that he was in fact paid during the emergency placement.

Thirdly, it is undisputed the emergency placement did not preclude or otherwise dissuade Plaintiff from pursuing and engaging in protected activities during and after the placement. He went on to contact an EEO counselor and file a complaint concerning the emergency placement. "Thus, the alleged retaliation attempt [was] apparently [] unsuccessful." *Somoza*, 513 F.3d at 1214. While by no means dispositive, "the fact that an employee continues to be undeterred in his or her pursuit of a remedy, as was the case here, may shed light as to whether the actions are sufficiently material

15

and adverse to be actionable." *Id.* (in case were the plaintiffs were not dissuaded by the defendant's alleged material and adverse retaliatory conduct, the court concluded that plaintiffs failed to show a materially adverse action).

Finally, Plaintiff's failure to argue and establish that the emergency placement was materially adverse goes beyond those specific ways discussed. In response to Defendant's motion, Plaintiff neither proffers nor directs the court to evidence that raises a genuine dispute of material fact as to whether the emergency placement was materially adverse. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283-84 (10th Cir. 2010) (opponent's response to summary-judgment motion must raise a factual dispute that is material to the motion). He instead offers mere conclusory and unsupported denials and quibbles with facts immaterial to that issue. *Compare* Def.'s Mot. at 16-18 84-98, *with* Pl.'s Resp. at 15-17 84-98; *see also Elephant Butte*, 538 F.3d at 1305. Furthermore, in its entirety, Plaintiff's argument in support of the second prong of the prima facie case is the following:

> *Adverse Action*
>
> Both the Agency's investigation and Green's emergency placement without pay were adverse actions. *Kulikowski v. Board of County Com's of City of Boulder*, 231 F.Supp. 2d, 153 (D. Colo. 2002) (a sham investigation is adverse action under Title IIV). Moreover a suspension without pay constitutes an adverse action. *See*, *Roberts v. Roadway Express, Inc*., 149 F.3d 1098 (10th Cir. 1998).

Pl.'s Resp. at 36-37. This patently falls short-particularly in light of the undisputed evidence that Plaintiff was paid his full salary without interruption after the emergency placement.

It is worth reiterating that Plaintiff bears the burden of showing that a reasonable person would have found the emergency placement materially adverse. *Stover*, 382 F.3d at 1070; *Somoza*, 513 F.3d at 1212. Whether any one of the four considerations I have discussed would alone preclude the emergency placement from being materially adverse is a question I need not answer. When

these considerations are aggregated, even when the facts and reasonable inferences therefrom are viewed in a light most favorable to Plaintiff, I conclude that Plaintiff fails to demonstrate that his emergency placement was a materially adverse action. Consequently, he has failed to discharge his burden of showing a prima facie case of retaliation. The claim therefore cannot withstand summary judgment. As a result, I need not reach Defendant's other arguments. *Griffin*, 929 F.2d at 554.

## C

I feel compelled to address an additional matter raised in the last two pages of Plaintiff's response. As explained, Plaintiff originally brought a claim alleging that Knight had retaliated against him by threatening criminal prosecution. *See* Doc #26 at 1. Pursuant to Defendant's motion to dismiss pursuant to Fed R. Civ. P. 12(b)(1), I dismissed this claim on the ground that Plaintiff had not exhausted it. *See id.* Now, in the final two pages of his response, Plaintiff "moves" that I reinstate it. Pl.'s Resp. at 43-44. The Local Rules of the District of Colorado provide that "[a] motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper." D.C.COLO.LCivR 7.1.C. I thus deny Plaintiff's request. *See, e.g.*, *Shepherd v. Liberty Acquisitions*, LLC, 2012 WL 2673101, *1 n.1 (D. Colo. 2012); *Precision Fitness Equip., Inc. v. Nautilus, Inc.*, 2009 WL 3698525, *4 (D. Colo. Nov. 4, 2009) (unpublished).

## D

A final issue should be addressed. The parties understandably spend much time on other aspects of Plaintiff's claims, including whether Plaintiff establishes a prima facie case of retaliation for his constructive discharge claim and whether he can show the third prong of the prima face case for his emergency placement claim. Indeed, pursuant to my January 24, 2013, order [Doc #128], at trial, a jury would be instructed that there is evidence of pretext. But, as the parties recognize,

analytically, these issues are all contingent upon and follow those that I have decided.  To rule on this motion, I need not assess whether the parties have met their respective burdens under the *McDonnell Douglas* framework as to Plaintiff's constructive discharge claim if, as I have determined, Plaintiff did not exhaust the claim. Nor must I consider whether Plaintiff has shown the third element of the prima facie case for his emergency placement claim or has shown pretext if, as happened here, Plaintiff failed to establish the second element.  Two consequences flow from this: First, I decline to consider these issues because  "[I] will not undertake to decide issues that do not affect the outcome of a dispute." *Griffin*, 929 F.2d at 554. Second and more importantly, these facts, and any dispute over them, do not preclude summary judgment. *Concrete Works*, 36 F.3d at 1516 ("Summary judgment is appropriate only "if . . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (citing Fed. R. Civ. P. 56(c)) (emphasis added); *Adler*, 144 F.3d at 670 ("An issue fact is 'material' if under the applicable substance law it is essential to the proper disposition of the claim.") (emphasis added).

## IV. Conclusion

For the reasons set forth above, IT IS ORDERED that Defendant's  Motion for Summary Judgment **[Doc #90]** is GRANTED, this action is DISMISSED, and Defendant is awarded costs.


Date: February   4  , 2013 in Denver, Colorado.

                                            BY THE COURT:

                                             s/Lewis T. Babcock
                                           LEWIS T. BABCOCK, JUDGE