IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-02201-LTB-KMT

MARVIN GREEN,

      Plaintiff,

v.

MEGAN J. BRENNAN, Postmaster General, United States Postal Service,

      Defendant.

## ORDER

This matter is before me on the Motion for Summary Judgment previously filed by Defendant on November 12, 2012. [Doc #90] As discussed below, I have renewed this motion based on Defendant's request in open court on August 24, 2017. [Doc #175] Oral arguments would not materially assist me in my determination. After consideration of the parties' briefs and attachments, and in light of the Tenth Circuit and Supreme Court decisions in this cases, I DENY the motion for the reasons stated.

### I. BACKGROUND

Plaintiff, Marvin Green, filed this lawsuit against his former employer, the Postmaster General, United States Postal Service (the "Postal Service") in 2010. In his Amended Complaint Plaintiff brought five claims for retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. [Doc #20] On October 28, 2011, I dismissed three of those claims, pursuant to Fed. R. Civ. P.

12(b)(6), based on Plaintiff's failure to exhausted his administrative remedies. [Doc #26] The dismissal of those three claims has been affirmed on appeal. *Green v. Donahoe*, 760 F.3d 1135, 1141 (10th Cir. 2014).

The two remaining claims of retaliation were based on the Postal Service's acts of: 1) placing Plaintiff on emergency off-duty status, and 2) constructive discharge via forced retirement. On February 4, 2013, I granted the Postal Service's Motion for Summary Judgment and dismissed Plaintiff's two remaining claims. [Doc #90] I ruled that Plaintiff's claim based on his emergency placement into off-duty status must be dismissed because he could not make out a *prima facie* case of retaliation in that he could not show that a reasonable employee would have found the act to be materially adverse. I likewise dismissed Plaintiff's retaliation claim based on constructive discharge on the basis that this claim was untimely, and thus not administratively exhausted, because Plaintiff did not contact the Equal Employment Opportunity (the "EEO") office at the Postal Service within 45 days of the matter alleged to be discriminatory.

On appeal of my summary judgment ruling on the emergency placement claim, the Tenth Circuit reversed. *See Green v. Donahoe, supra,* 760 F.3d at 1146. The Court ruled that Plaintiff presented evidence sufficient to establish the second element of his *prima facie* case that the act of placing him on emergency placement was materially adverse. *Id.* On appeal of my summary judgment ruling on the constructive discharge claim, the United States Supreme Court reversed the entry of summary judgment in favor of the Postal Service for Plaintiff's failure to exhaust

his administrative remedies.  *Green v. Brennan*, ___ U.S. ___, 136 S. Ct. 1769, 195 L. Ed. 2d 44 (2016).  The Supreme Court ruled that the 45-day clock during which a plaintiff must contact the EEO office for a constructive discharge claim begins running only after the employee resigns.  Accordingly, the Court remanded the matter to the Tenth Circuit to determine that date.  *Id.* 136 S. Ct. at 1782 ("[h]aving concluded that the limitations period for [Plaintiff's] constructive-discharge claim runs from the date he gave notice of his resignation, we leave it to the Tenth Circuit to determine when this in fact occurred").

On remand from Supreme Court, the Tenth Circuit subsequently determined that Plaintiff did not resign until February 9, 2010, when he submitted his retirement paperwork to the Postal Service (as opposed to December 16, 2009, when he signed the agreement).  *Green v. Brennan*, 669 F. App'x 951 (10th Cir. 2016) (unpublished).  Because it is undisputed that Plaintiff contacted the EEO office at the Postal Service within 45 days of that date, the parties agree that Plaintiff's retaliation claim based on constructive discharge was timely filed, and he did not fail to exhaust his administrative remedies on this claim.

Therefore, following the appellate process, Plaintiff now has two retaliation claims at issue based on the Postal Service actions of:  1) placing him on emergency off-duty status; and 2) forcing him into retirement resulting in constructive discharge.  At a Status/Scheduling Conference on August 24, 2017, the Postal Services made an oral motion requesting that I review its previously-filed Motion

for Summary Judgment in order to rule on its unaddressed arguments. Because I initially granted summary judgment in favor of the Postal Service, and dismissed all of Plaintiff's claims, I did not reach the other grounds raised by the Postal Service for granting summary judgment in its favor. I granted the Postal Services request and, as such, I now reach those unaddressed arguments in this order.

## II. UNDERLYING FACTS

The underlying facts of this case, stated in the light most favorable to Plaintiff, are as follows. Plaintiff is an African-American man who began working for the Postal Service in 1973. In 2002, Plaintiff was promoted to an EAS-22 level Postmaster at the Englewood, Colorado post office, which was in the Colorado/Wyoming district. At the time of the pertinent events, Plaintiff had no disciplinary reports in his permanent file.

In early 2008, Plaintiff applied for an EAS-24 Postmaster position in Boulder, Colorado. He was not hired. Shortly thereafter, on August 14, 2008, Plaintiff filed a formal complaint with the Postal Service's EEO office alleging that Gregory Christ – who was Plaintiff's immediate supervisor from 2008 through July 2009 and who was responsible for selecting the Boulder Postmaster – had not hired Plaintiff because of his race. This complaint was ultimately resolved through a settlement.

Following this activity, Plaintiff's relationship with his supervisors deteriorated and tensions between them were high. On May 14, 2009, Plaintiff filed an informal EEO complaint alleging that Mr. Christ had again discriminated

against him because of his race, and had retaliated against him because of his prior EEO activity, by threatening, demeaning and harassing him. Plaintiff filed a similar informal EEO complaint on July 17, 2009. In it he alleged that Mr. Christ and Jarmin Smith, who replaced Mr. Christ as Plaintiff's immediate supervisor in July 2009, had also retaliated against him because of his EEO activity related to the Boulder Postmaster position. The Postal Service's EEO office completed its investigation and informed Plaintiff that he could file a formal charge, but he did not do so.

Then, in late November of 2009, Plaintiff received a certified letter from Charmaine Ehrenshaft who was the Postal Service's Manager of Labor Relations for the Colorado/Wyoming district. The letter instructed Plaintiff to appear for an investigative interview regarding allegations of non-compliance with the Postal Service's employee grievance procedures.

On December 11, 2009, Ms. Ehrenshaft and David Knight, her supervisor and the Manager of Human Resources for the Postal Service's Colorado/Wyoming district, conducted the investigative interview. Mr. Knight asked Plaintiff about the grievance issues and about whether he intentionally delaying signing return receipts for grievances. In addition, he also asked Plaintiff about certain allegations that another Postal Service employee had levied against him. As the investigation with Mr. Knight and Ms. Ehrenshaft concluded, two agents from the Postal Service's Office of Inspector General (the "OIG") entered the room. The OIG, an

independent branch of the Postal Service, had initiated its own investigation into whether Plaintiff had intentionally delayed the mail – a criminal offense – based on a congressional inquiry related to complaints by the National Letter Carrier's Union. Mr. Knight had previously told an OIG agent that he would be interviewing Plaintiff at that time, and indicated that the agent could interview Plaintiff afterwards.

After the OIG interview, Mr. Knight and Ms. Ehrenshaft gave Plaintiff an emergency placement letter for his signature. Plaintiff signed the letter thereby putting him on emergency placement, effective immediately, until the matter was resolved. The letter stated that Plaintiff was being placed in "off-duty status immediately" for the disruption of day-to-day postal operations and "the employee is returned to duty status when the cause for nonpay status ceases." Mr. Knight ordered Plaintiff to surrender his Postal Service identification and cell phone, and told him to not to return to the Englewood post office.

The OIG agents had concluded, at the end of the interview, that Plaintiff had not intentionally delayed the mail. Even though the OIG agents reported to Plaintiff's supervisors that no further investigation was warranted, they subsequently represented to Plaintiff that "the OIG is all over this" and that the criminal charge "could be a life changer."

Following the investigative interview and emergency placement, Plaintiff and the Postal Service signed an agreement on December 16, 2009, whose meaning

remains disputed. The Postal Service promised not to pursue criminal charges in exchange for Plaintiff's agreement to leave his post in Englewood. The agreement gave Plaintiff the choice to either retire from the Postal Service, effective March 31, 2010, or report for duty in Wamsutter, Wyoming, at a considerably lower salary. Plaintiff submitted his retirement papers on February 9, 2010, in which his retirement would be effective March 31, 2010.

On January 7, 2010, Green met with an EEO counselor and filed an informal charge alleging that he had been retaliated against on December 11, the day of the investigative interview, when he was removed from his postmaster position and was issued the emergency-placement letter. On February 17, 2010, Plaintiff filed a formal EEO complaint alleging that by putting him on emergency placement on December 11, 2009, Mr. Knight, Ms. Ehrenshaft, and a Mr. Smith had retaliated against him for his prior EEO activity.

On March 22, 2010, Plaintiff filed an informal EEO complaint in which he alleged that he had been constructively discharged by being forced to retire in retaliation for prior EEO activity. Plaintiff followed up this informal complaint with a formal complaint on April 26, 2010. Plaintiff then filed this lawsuit on September 8, 2010.

### III. APPLICABLE LAW

Title VII proscribes retaliating against an employee because he or she "opposed" any practice made unlawful by Title VII, or because he or she

7

"participated . . . in an investigation, proceeding, or hearing under this subchapter." *See* 42 U.S.C. § 2000e-3(a); *see also Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). Where there is no direct evidence of retaliation, as here, we analyze a retaliation claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting analysis the plaintiff has the initial burden of establishing a *prima facie* case of retaliation. *Stover v. Martinez, supra,* 382 F.3d at 1070. To establish a *prima facie* claim of retaliation, a plaintiff must show that: (1) he or she engaged in protected activity; (2) the defendant took an adverse employment action against him or her; and (3) there exists a causal connection between the protected activity and the adverse action. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004).

The burden then shift to the defendant to produce a legitimate, non-discriminatory justification for taking the disputed employment action. *Stover v. Martinez, supra,* 382 F.3d at 1071. If the defendant so provides the burden shifts back to the plaintiff to show that the proffered reason is a pretext for unlawful discrimination. *Id.* (*citing Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003)). Pretext can be inferred from evidence revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015)(*quoting Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). It may also be alleged "by

8

providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated." *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012).

## IV. STANDARD OF REVIEW

The moving party, in this case the Postal Service, bears the initial burden of making demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). To meet this burden, the Postal Service need not disprove Plaintiff's claims; rather, it must "simply point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If it meets this initial burden, the burden shifts to the nonmoving party, here Plaintiff, to "set forth specific facts showing that there is an genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Plaintiff may not rest upon his pleadings to do so; instead, he must instead "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart, supra,* 144 F.3d at 671.

## V. EMERGENCY PLACEMENT CLAIM

As to Plaintiff's claim that his off-duty emergency placement was retaliatory, I address the Postal Service's arguments set forth in its Motion for Summary

Judgment which I did not reach in my previous order. The Postal Service contends that Plaintiff cannot establish a *prima facie* case of retaliation because he cannot show causation between his protected EEO activity and the emergency placement (third element).

To establish a causal connection, a plaintiff must present evidence of circumstances that justify an inference of retaliatory motive. *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)(*quoting Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)). A causal connection may be established by proffering evidence of protected conduct closely followed in time by adverse action. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999); *see also Ward v. Jewell, supra,* 772 F.3d at 1203 (noting that if the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection). When the temporal proximity is too long for a fact-finder to infer causation, a plaintiff may use additional evidence to establish causation. *Id.* (*citing Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)). The Supreme Court has likened this burden to a showing of "but-for causation." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016)(*citing Univ. of Tex. Sw. Med. Ctr. v. Nassar,* ___ U.S. ___, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)).

Plaintiff argues that his last protected activity was on July 17, 2009 – when he contacted the EEO at the Postal Service to file an informal complaint – and it is

undisputed that he was placed on emergency off-duty status by the Postal Service almost five months later, on December 11, 2009. I note that to the extent Plaintiff asserts that he engaged in a protected activity on August 12, 2009, Plaintiff concedes that the action on that date was actually a letter from the EEO office informing him of his right to file a formal complaint. [Doc #106 pp. 23-24] As such, the date of his last protected activity was actually July 17, 2009. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L.Ed. 2d 509 (2001) (referring to the suggestion that issuance of a right-to-sue letter – an action in which the employee takes no part – as is a protected activity of the employee as an "utterly implausible" contention).

The Postal Service contends that this four-to-five month delay is too long for a fact finder to infer a close temporal proximity of the protected act to the adverse action. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) ("[f]our months is too large a time gap to establish a causal connection"); *Anderson v. Coors, supra,* 181 F.3d at 1179 (stating that a three-month period, standing alone, was too long for a fact-finder to infer causation); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)(ruling that a lapse of four months from protected conduct to adverse action insufficient, without other evidence, to give rise to inference of causation for a FLSA retaliation claim).

Plaintiff argues, in response, that the passage of time does not bar a retaliation claim when additional evidence reinforces the inference of a retaliatory

11

motive. He asserts that in this case there is evidence of a pattern of adverse personnel actions that demonstrate the Postal Service's retaliatory animus in that his facts, as alleged, "show a pattern of harassment." [Doc #106 pg. 39] In support of this argument, Plaintiff cites *Wells v. Colorado Department of Transportation*, 325 F.3d 1205 (10th Cir. 2003), in which the Tenth Circuit found that although "[a] five-month gap between a protected activity and an adverse action would ordinarily be too great a time lapse to support an inference of causation based on timing alone," the "unique circumstances . . . of the case warranted a divergence from the general rule of close temporal proximity." *Id.* at 1217 (concluding that where the plaintiff: (1) filed a charge; (2) went on leave; (3) returned five months later; and (4) was promptly transferred to a demeaning job – a jury could reasonably draw an inference of retaliatory intent).

When the facts are viewed in the light most favorable to Plaintiff, I agree that there are unique circumstances in this case that reveal an inference of retaliatory animus despite the four to five month delay between Plaintiff's protected activity and placing him on emergency leave. First, as noted by Plaintiff, it is undisputed that he worked for the Postal Service for thirty-six years and during that time he "had never been disciplined or had any work related problems." It was only after he began complaining of discrimination, after he was not hired for the Boulder Postmaster position, that he began to be subjected to various increasingly adverse personnel actions. Most notably, Plaintiff was informed that he was under

investigation, via a letter sent to his home informing him of the interview. That interview was expanded – without Plaintiff's knowledge – to include another matter and the OIG criminal investigation. Then, despite being told that OIG criminal investigation would not be pursued, Mr. Knight and Ms. Ehrenshaft placed Plaintiff on emergency off-duty status. The letter indicating this emergency placement indicated Plaintiff would not be paid. The evidence, when viewed in Plaintiff's favor, is that his relationship with his supervisors crumbled following his initial complaints of race discrimination and, thereafter, he was subjected to adverse disciplinary employments actions. Plaintiff was given the inaccurate impression that the OIG investigation was still pending and that a criminal charge "could be a life changer." Ultimately, he was given the choice to move to a lesser-post in Wyoming, or retire from the Postal Service, for the Postal Service to agree that no charges would be pursued against him.

I agree with Plaintiff that the circumstances of this case – which involved a long-term employee that for many years had never been disciplined and then, after he complained of race discrimination in a hiring decision, his relationships with his superiors deteriorated and he was subjected to several adverse employment acts culminating a threat of criminal charges and a decision to take a lesser position or retire – constitutes a pattern of harassment sufficient to demonstrate but-for causation when the actions complained-of occurred within the four-to-five months following his last protected activity. *See generally Foster v. Mountain Coal, supra,*

830 F.3d at FN 7 (noting that in the Tenth Circuit, "a retaliation plaintiff must show evidence of but-for causation at the *prima facie* stage . . . where *substantial* time has elapsed between the plaintiff's protected activity and the resultant adverse employment action")(emphasis added); *Ward v. Jewell, supra,* 772 F.3d at 1203 (noting that a plaintiff may use additional evidence to establish causation when temporal proximity, standing alone, is not enough). Therefore, I conclude that Plaintiff has provided evidence, when viewed in his favor, sufficient to infer causation in order to make out the third element of his *prima facie* case for retaliation.

## VI. CONSTRUCTIVE DISCHARGE CLAIM

As to Plaintiff's claim that the Postal Service forced him to retire, resulting in constructive discharge in retaliation for his EEO filings, I address the Postal Service's arguments set forth in its Motion for Summary Judgment which I did not reach in my previous order. It again argues that Plaintiff cannot establish a *prima facie* case of retaliation. The Postal Service first argues that there was no adverse employment action (second element) because Plaintiff was not constructively discharged, in that the undisputed facts show that Plaintiff's retirement was not objectively involuntary. Additionally, it again asserts that Plaintiff cannot show causation (third element) as there is insufficient evidence of temporal proximity, and no circumstantial evidence demonstrating that the decision-makers in the retaliatory conduct took such action because of his protected activity.

14

"Constructive discharge occurs when an employer unlawfully creates working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1133 (10th Cir. 2013). When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge. *Green v. Brennan, supra,* 136 S. Ct. at 1777 (*citing Pennsylvania State Police v. Suders*, 542 U.S. 129, 148, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)). A claim of constructive discharge therefore has two basic elements: 1) a plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign; and 2) a plaintiff must also show that he actually resigned. *Green v. Brennan, supra,* 136 S.Ct. at 1777 (*citing Penn. State Police v. Suders*, *supra*, 542 U.S. at 148)(indicating that "[a] constructive discharge involves both an employee's decision to leave and precipitating conduct").

In this case, Plaintiff has provided sufficient evidence that a reasonable person in his position would have felt compelled to resign in order show an adverse employment action as the second element of his *prima facie* case for retaliation. The facts, when viewed in his favor, are that following his complaint of racial discrimination in failing to hire him for the Boulder postmaster position, tensions increased and his relationship with his supervisors degenerated to the point that he was investigated and interviewed for various allegations of misconduct, including a

15

previously unknown charge of criminal conduct. Then, following the interview, Plaintiff was placed on emergency off-duty status, via a formal letter indication he would not be paid, effective immediately. Plaintiff was required to surrender his Postal Service identification and cell phone, and told to not to return to the Englewood post office.

The Postal Service argues that settlement negotiations were initiated by Plaintiff, via his representative, and there is "no evidence that Mr. Knight or Ms. Ehrenshaft proposed or demanded that Plaintiff retire or even enter into a settlement agreement at all." [Doc #29 pg. 29] Plaintiff argues that he was not negotiating his retirement, but rather that the negotiations were intended for him to remain receiving pay and cease the pursuit of criminal charges. And, as alleged by Plaintiff, Mr. Knight and Ms. Ehrenshaft misrepresented that the OIG was continuing to pursue such charges. Finally, Plaintiff was given either the option to retire or take a much less desirable job for less salary. Under these circumstances, I disagree with the Postal Service's assertion that it is undisputed that Plaintiff's choice to retire was objectively voluntary, and that thus it is undisputed that he was not constructively discharged. Plaintiff has met his burden of providing sufficient evidence to demonstrate that a reasonable person in his position would have felt compelled to resign, resulting in an adverse employment action, as the second element of a *prima facie* case of retaliation.

To the extent that the Postal Service asserts that Plaintiff has failed to set

16

forth evidence sufficient to infer causation in order to make out the third element of his *prima facie* case for retaliation based being forced to retire/constructive discharge, I disagree. For the same reasons stated above related to his claim based on the emergency placement, I conclude that he has set forth sufficient evidence to support the inference that the decision to force his retirement approximately five months after his last protected activity was causally related.

## VII. BUSINESS REASONS/PRETEXT

Finally, because I have concluded that Plaintiff is able to make out his *prima facie* case of retaliation for both claims, I briefly address the Postal Service's argument that it had legitimate non-discriminatory business reasons for placing Plaintiff on emergency leave and for seeking his retirement.

Assuming, *arguendo*, that the Postal Service can articulate legitimate reasons for its actions in placing Plaintiff on emergency leave and seeking or forcing his retirement, Plaintiff has provided evidence to show that the proffered reason is a pretext for unlawful discrimination. Specifically, after this motion was briefed, I ruled that Ms. Ehrenshaft's actions in destroying relevant disciplinary files of other Postal Service employees warranted a sanction that such spoilation constituted evidence of pretext. As a result, I ruled that the jury will be instructed that Ms. Ehrenshaft's acts in destroying the records is evidence of pretext of unlawful discrimination, and that "[t]he Court will likewise consider that conduct evidence of pretext when considering Defendant's pending motion for summary judgment." [Doc

17

#128]  The critical question regarding pretext "is whether a reasonable factfinder could rationally find the employer's rationale unworthy of credence and hence infer that the employer did not act for the asserted non-retaliatory reasons." *Lounds v. Lincare, supra*, 812 F.3d at 1234 (*quoting Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007)).  Where a plaintiff has presented specific facts to show that there is a genuine issue of whether the proffered reasons are pretextual, summary judgment is improper.  *Starks v. Coors Brewing Co.*, 954 F. Supp. 1463, 1469 (D. Colo. 1997).

Therefore, even if the Postal Service can met its burden to produce legitimate, nondiscriminatory justification for its actions against Plaintiff, the actions of Ms. Ehrenshaft in destroying the relevant personal files after the commencement of this litigation is sufficient, as a matter of law based on my sanctions ruling, for Plaintiff to show pretext in order to rebut the Postal Service's proffered legitimate reasons.  *See generally Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)(ruling that a plaintiff may show that the employer's stated reason is pretextual "by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness"); *McKenzie v. Atl. Richfield Co.*, 906 F. Supp. 572 (D. Colo. 1995)(noting that evidence that other workers at employee's level had never been disciplined for like conduct satisfied requirement that employee offer evidence of pretext).

18

ACCORDINGLY, for the reasons stated, I DENY the Motion for Summary Judgment, previously filed by Defendant on November 12, 2012 [Doc #90], as renewed based on Defendant's request in open court on August 24, 2017. [Doc #175]

Dated: September   13  , 2017 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK